## Taylor et al. v. Vaughan.

(Decided November 18, 1930.)

ROBERT T. CROWE, WILLIAM J. CROWE and J. H. GARDNER for appellants.

J. BALLARD CLARK, HERBERT F. BOEHL and BLAKEY, DAVIS & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In these consolidated actions against Mrs. J. M. Vaughan by Verna G. Taylor, R. B. Taylor, P. D. Taylor, and Mary Pryor Taylor, for personal injuries growing out of an automobile accident, and by R. B. Taylor for

damages to his machine, the trial court at the conclusion of the evidence for the defendant directed a verdict in her favor. Plaintiffs appeal.

The undisputed facts are these: The accident occurred on the evening of November 24, 1928, on the Lagrange-Louisville state highway at a point near the Kuersteiner place some four or five miles west of Lagrange. The road was eighteen feet wide and newly surfaced, but there were some new screenings on each side of the road. R. B. Taylor was driving a Plymouth Chrysler toward Louisville. On the front seat with him were his wife, Verna G. Taylor, and their child. On the rear seat were his father and mother, P. D. Taylor and Mary Pryor Taylor, and his infant daughter. Mrs. Vaughan was driving a Chrysler east from Louisville. In her car were her daughter and son-in-law, Mr. and Mrs. Hargrove, and their two children. Just above the place of the accident there is a small hill in the road, and one going toward the hill on either side cannot see a car approaching from the other side. From the crest of the hill going toward Louisville there is a slight curve to the right. At the time of the accident the Taylor car was about one hundred fifty feet down the hill, and on the curve, and was traveling from thirty-two to thirty-five miles an hour. The lights on both cars were burning, and each of the drivers states that he saw the other car approaching for some distance before the collision. The front ends of the two cars passed all right and then the collision occurred. When the cars stopped, the Vaughan car was standing diagonally across the road near the place of collision. On the other hand, the Taylor car was turned completely around and was lying on its right side some sixty or seventy-five feet west of the Vaughan car, and on the south side of the road. The witnesses differ as to the cause of the accident. According to P. D. Taylor they were traveling about thirty or thirty-five miles an hour and were on their side of the road. He knew this because it was a new road and he was looking at it. He noticed nothing unusual about the Vaughan car, and saw nothing to indicate that that car was or was not on its side of the road. On cross-examination he stated that to the best of his knowledge the car always traveled on the right-hand side of the road, but it was possible that at some time it might have gotten over in the center part of the road. He knew where the driver

ought to go and he was going that way as well as he could go. When nobody is in sight drivers sometimes get over in the center of the road. R. B. Taylor, the owner and driver of the car, testified that they were going between thirty and thirty-five miles an hour, and had gotten over the hill about one hundred or one hundred fifty feet. He could see the other car coming for possibly a distance of one hundred, two hundred, or three hundred feet. He was then asked and answered the following questions:

"37. Was there anything unusual about it? A. No, sir.

"38. Was it on its own side of the road? A. Apparently.

"39. Now, were you on your side of the road? A. Yes, sir.

"40. Now, tell us just everything you know about what happened then and there? A. Well, it is so little, we were just merely driving down the road and as we thought, of course, that cars coming toward us could see our car, I was driving down and watching the Kuersteiner fence, or at least some of them in the car mentioned what kind of a fence it was, it was at night, driving at night I always watch the right hand side of the road and don't pay any particular attention to the car coming toward us, if I stay on my side of the road I can't help what the other fellow does, all of a sudden the crash came, that's all."

He then stated that he did not know the crash was coming and did not apply his brakes at any time before the accident. Mrs. Mary Pryor Taylor testified that she was sitting on the back seat of the car. She never saw the Vaughan car approaching. The first thing she knew of what occurred was when the light flashed across the back seat. Mrs. Verna G. Taylor, who was in the front seat with her husband, testified that she looked at the speedometer, and they were going about thirty-two miles an hour. She noticed the road and they were on the right side of the road. She did not see a thing unusual about the Vaughan car. It looked as if it were in the proper place. After the collision she did not know a thing that happened. Mr. R. R. Elliott, a civil engineer, testified that the traffic had worn the screenings back off the

middle part of the road. On each side of the road there were screenings possibly two inches thick, and for a distance of about a foot and a half. On the other hand, Mrs. Vaughan testified that she had had ten years' experience in driving a car. At the time of the accident she was on the right side and had stayed closely on that side for quite a distance. She had passed a car prior to the accident and had pulled out near the outer edge of the road. From the time she passed that car until she got by the Taylor car the right wheels never got off the screenings. Her left wheels were a couple of feet on the right side of the center of the road. At no time was she on the Taylor's side of the road. After the accident her car lacked a foot and a half or two feet of being in the center of the road. At the time of the collision there was ample space for the Taylor car to pass. Mrs. Vaughan's son-in-law, Mr. Hargrove, testified that just prior to the accident and at the time of the accident they were on the right of the center of the road and about four inches from the outer edge. At no time was the Vaughan car as far over as the center of the road.

In support of the ruling of the trial court it is pointed out by counsel for appellee that none of appellants' witnesses testified that the Vaughan car was on the wrong side of the road, but all of them stated that the Vaughan car appeared to be on the right-hand side of the road. In view of this situation, it is claimed that all the jury could do was to guess as to the cause of the accident, and, that being true, there was nothing to submit to the jury. We are unable to agree with this contention. The accident could have happened in only one of two ways—either because the Taylor car was on the wrong side of the road or the Vaughan car was on the wrong side of the road. Though the witnesses for appellants say that the Vaughan car was apparently on its side of the road, they testified emphatically that the Taylor car at the time of the accident was on its side of the road. If it be true that the Taylor car was proceeding on the right of the center of the road, then the Vaughan car must have been driven to the left of the center of the road. Therefore, appellants' witnesses made out a case for them when they testified that the Taylor car was on the right side of the road, and the evidence of the witnesses for Mrs. Vaughan that her car was moving on the right side of the center of the road

merely completed the issue to be determined by the jury. In the circumstances the questions of negligence and contributory negligence turn on which set of witnesses is to be believed, and, where that situation develops, the mere fact that the questions are difficult of solution, or such as to excite doubt in the minds of the jury, does not make the case a guessing one within the rule forbidding that character of cases to be submitted to the jury. We are therefore constrained to hold that the trial court erred in sustaining appellee's motion for a peremptory instruction.

Wherefore, the judgment in each case is reversed, and cause remanded for a new trial consistent with this opinion.